UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAGOBERTO SANCHEZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. |
| | ) | 12-10931-FDS |
| v. | ) | |
| | ) | |
| GARY RODEN, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is an action by a state prisoner seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Dagoberto Sanchez was convicted in Suffolk County of second-degree murder and unlawful possession of a firearm. He was sentenced to a term of life imprisonment (with the possibility of parole after 15 years) on the murder conviction and a concurrent two-year term on the firearm conviction. Sanchez now seeks habeas relief, contending that the prosecution deliberately exercised peremptory challenges to strike young men "of color" in violation of his constitutional rights.

For the reasons set forth below, the petition will be denied.

**I.   Background**

    **A.   The Trial**

The facts surrounding the crime that led to Sanchez's conviction are extensively set out in the decision of the Massachusetts Appeals Court on the his direct appeal, and only the facts that

are relevant to this opinion bear repetition.  *See Commonwealth v. Sanchez*, 79 Mass. App. Ct. 189 (2011).  The petition now before the Court concerns not the events of the crime, but events that transpired at trial and on direct appeal.

On August 25, 2005, Sanchez was indicted on one count of second-degree murder and one count of unlawful possession of a firearm.  His trial began on September 25, 2006.  The jury selection process took two days.  By the second day, the prosecution had used eleven peremptory challenges to remove eight white jurors, one 41-year-old Hispanic man, and two African-American men, ages 24 and 25.  At that point, ten jurors had been seated, five of whom were African-American.  The five African-Americans already seated on the jury included two men, ages 51 and 34.  Sanchez's counsel objected to the prosecution's use of its twelfth peremptory challenge against Juror No. 261, an 18-year-old African-American man.  Defense counsel argued that the challenge of a third young African-American juror established a discriminatory pattern of excluding young black males, or, when taken with the exclusion of the 41-year-old Hispanic juror, established a pattern of excluding young dark-skinned jurors.

After counsel raised that objection, the trial court initially observed that there was a pattern of challenging young black men.  After some discussion at sidebar about the racial identity of the excluded Hispanic juror, the following exchange occurred between the court and defense counsel:

> THE COURT:   Counsel, the clerk indicates that we have, already, five black people sitting on this jury, okay; so I can't see, as a class; regarding to the color would be a problem.  I think the only - what you're basically saying is it's because they're young black men, is that correct? In other words, the emphasis on their age?
>
> MR. SHAPIRO:   I think that's certainly part of it; I mean I think that that's what distinguishes these challenges from the other black persons who

|  |  |
|---|---|
|  | weren't challenged. But I think that even if you just look at the two black persons who were challenged, that would be two out of a total of seven which is a significant percentage, in and of itself. But the additional feature to the black persons who have been challenged, I believe, are the relatively youthful – I guess one is 24 and one is 25. |
| THE COURT: | . . . Counsel, in looking at the case law . . . there's nothing with a reference to age here that is one of the classes under Commonwealth versus Soares. |
| MR. SHAPIRO: | I agree and . . . even if you take out Mr. Chinchilla, the Guatemalan [the excluded Hispanic juror] . . . would be the third black man challenged out of a total of eight questioned, so far. So we have three out of a total of eight; which, I say is a significant percentage – |
| THE COURT: | I make a determination that there has not been shown a pattern of discrimination in this case, under the Soares case, at this time. |

The trial court allowed the exclusion of Juror No. 261 over defense counsel's objection. Because a *prima facie* showing of impropriety had not been made, the prosecutor was not required to justify his use of a peremptory challenge.[1]

The record does not reflect the final racial composition of the jury, although it appeared to have at least five African-American members. On October 6, 2006, the jury found Sanchez guilty of both counts.

### B.     The Direct Appeal

Sanchez appealed his conviction to the Massachusetts Appeals Court. He raised two arguments as to the trial judge's jury instructions that are not at issue here. He also argued that the government's use of peremptory challenges was unconstitutional. Specifically, he contended that the exclusion of four apparently young men "of color" violated the Equal Protection Clause

---

[1] The trial judge did note, however, that the inclusion of Juror No. 261 could present a problem because of his "youth and the fact that he's a full-time college student." *See* (Docket No. 2 at 23); *see also Sanchez*, 79 Mass. App. Ct. 189, 191, n.7.

of the Fourteenth Amendment and Article 12 of the Massachusetts Declaration of Rights.

The Appeals Court affirmed the conviction. The court found that Sanchez had not made a *prima facie* showing of impropriety, because he could not show a pattern of "excluding members of a discrete group" where it was "likely that individuals [were excluded] solely on the basis of their membership in that group." *Sanchez*, 79 Mass. App. Ct. at 192 (citing *Commonwealth v. Maldonado*, 439 Mass. 460, 463 (2003)). The court found that there was no pattern of discrimination in light of the fact that five African-Americans had already been seated on the jury; that age was not a protected class under either the United States Constitution or the Massachusetts Declaration of Rights; and that persons "of color" was not a cognizable group under either state or federal law. *Id.* at 192-93. Because Sanchez could not establish a *prima facie* showing of impropriety, the government was not required to justify the peremptory challenge. *Id.* at 191.

### C.     The Application to Leave for Further Appellate Review

Sanchez then filed an Application for Leave to Obtain Further Appellate Review (ALOFAR) with the Supreme Judicial Court (SJC). In his ALOFAR, Sanchez set forth the same three arguments, including the argument that the prosecutor improperly used peremptory challenges to discriminate against young men "of color." Sanchez, however, did not explicitly argue that the government's use of peremptory challenges discriminated against young African-American men. On June 29, 2011, the SJC summarily denied the ALOFAR. *Commonwealth v. Sanchez*, 460 Mass. 1106 (2011). Sanchez then petitioned for a writ of certiorari from the Supreme Court of the United States, which was denied on October 11, 2011.

### D. Federal Proceedings

On May 23, 2012, Sanchez filed a petition for a writ of habeas corpus in this Court. Sanchez concedes that the jury that decided his case was a fair cross-section of the community within the meaning of the Sixth Amendment. However, he contends that the government violated the Equal Protection Clause of the Fourteenth Amendment when the prosecutor used four peremptory challenges on "the first four apparently young dark-skinned men in the jury pool."[2] He contends that the government's use of peremptory challenges against the four dark-skinned prospective jurors established a *prima facie* case of combined color/gender discrimination. Alternatively, he contends that the exclusion of three African-American men, without consideration of the excluded Hispanic man, establishes a *prima facie* showing of racial discrimination.[3]

## II.  Standard of Review

A federal court may not grant an application for a writ of habeas corpus for a person in state custody unless the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, " or the decision was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"'[A]n unreasonable application' of Supreme Court case law occurs if 'the state court identifies the correct governing legal principle for th[e] [Supreme] Court's decisions but

---

[2] Petitioner does not explain how the 34-year-old African-American man who was seated on the jury was not as "apparently young" as the 41-year-old Hispanic man who was excluded.

[3] The Court notes that in petitioner's brief to the Massachusetts Appeals Court and in his ALOFAR he argued that the government's use of peremptory challenges was unconstitutional toward "persons of color," and did not expressly argue that the government excluded members based on their status as young African-American men. It is unclear to this Court whether petitioner fairly presented his argument concerning African-Americans to the state courts for exhaustion purposes. Respondent did not, however, raise any such argument in his opposition. The Court, therefore, will not consider the exhaustion issue.

unreasonably applies that principle to the facts of the prisoner's case." *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir. 2003). The "unreasonable application" determination must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the court proceedings. *Id.* Nevertheless, factually similar cases from the lower federal courts "may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscope array of fact patterns." *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002).

If a claim was not "adjudicated on the merits in State court proceedings," then the claim should be reviewed *de novo* by the district court. *Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir. 2010). In determining whether a claim was adjudicated on the merits in state court, the Court looks to whether the state court decision resolved the parties' claims, with *res judicata* effect, based on the substance of the claim advanced, rather than on a procedural, or other, ground. *Id.* Furthermore, to garner the protection of deferential review, the claim must not only be adjudicated on the merits, but, specifically, the merits of the *federal* claim at issue, which is complicated by the fact that determining precisely which "substance" a state court relied on may be difficult to ascertain. *Id.* at 53.

Petitioner contends that his claim was not adjudicated on the merits in state court proceedings, and, therefore, he is entitled to *de novo* review.

### A. State Adjudication

The Massachusetts Appeals Court affirmed the trial court's finding that petitioner could not rebut the presumption of propriety in the prosecutor's use of peremptory challenges. *See Sanchez*, 79 Mass. App. Ct. at 191. In doing so, the Appeals Court reiterated the Massachusetts

standard: "Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that '(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded on the basis of their membership' in that group." *Commonwealth v. Soares*, 377 Mass. 461, 490 (1979).

The corresponding federal standard was established in *Batson v. Kentucky*, 476 U.S. 79 (1979). To make a *prima facie* showing under *Batson*, a defendant must merely raise an inference that the prosecutor struck a juror because of race or other protected status. *See Johnson v. California*, 545 U.S. 162, 169 (2005). To make a *prima facie* showing under the Massachusetts standard, however, it must be shown that it is "likely" that the venireperson was excluded because of his protected group membership. *Maldonado*, 439 Mass. at 463. The Massachusetts "likely" standard is thus more stringent than the federal standard. *Aspen v. Bissonnette*, 480 F.3d 571, 575 (1st Cir. 2007). The Appeals Court therefore held petitioner to a higher standard than federal law required.

Where, as here, it is clear that the state court analyzed a petitioner's claim under a higher standard than federal law requires, the Court can interpret the holding in two ways, both of which lead to *de novo* review of the federal claim. The Court can interpret the state court's analysis as equating the federal and state standards, and thereby resulting in the application of a standard contrary to clearly established federal law. *See Aspen*, 480 F.3d at 576. In such a situation, the Court must "consider de novo whether [petitioner] is entitled to relief under the correct *Batson* standard." *Id.* Alternatively, the Court could interpret the state court's holding as resting entirely on substantive state law grounds, which would indicate that petitioner's federal claim had not been adjudicated on the merits within the meaning of 28 U.S.C. § 2254(d). *See*

*Clements*, 592 F.3d at 53 ("Were we to find that the state court had relied solely on state standards that did not implicate federal constitutional issues, we would review the matter de novo."). Accordingly, this Court will review the merits of the federal constitutional claim *de novo*.

### III.   Analysis

Petitioner contends that his Equal Protection rights were violated when the government used four peremptory challenges to remove three African-American men, ages 24, 25, and 18, respectively, and one dark-skinned Hispanic man, age 41, from the jury. He contends that the government violated the Fourteenth Amendment because it discriminated against these individuals because of their status as young men "of color." He argues that because race and gender are impermissible reasons for exclusion of jurors under federal law, the Massachusetts Appeals Court erred in affirming his conviction because it should have recognized the combination of age, gender, and race as a *Batson* violation.

For the reasons set forth below, this Court finds that the Massachusetts Appeals Court correctly applied the law in accordance with federal precedent.

#### A.   *Prima Facie* Standard

When a defendant asserts that a prosecutor has used a peremptory challenge in a discriminatory manner, *Batson* instructs the trial judge to follow a three-step inquiry. 476 U.S. at 96-98. The moving party bears the initial burden of demonstrating a *prima facie* case of discrimination. *Aspen*, 480 F.3d at 574 (citing *Batson*, 476 U.S. at 96-98). If this burden is met, the non-moving party must then offer a non-discriminatory reason for striking the potential juror. *Id.* The trial court must then determine if the moving party has met its ultimate burden of

persuasion that the peremptory challenge was exercised for a discriminatory reason. *Id.*

"While the *prima facie* case requirement is not onerous, neither can it be taken for granted." *United States v. Bergodere*, 40 F.3d 512, 516 (1st Cir. 1994). To surmount this initial hurdle, the defendant must present evidence sufficient to raise an inference that the prosecutor struck the venireperson because of race. *Johnson,* 545 U.S. at 169. In determining whether a *prima facie* showing has been made, the judge should consider all relevant facts and circumstances, including the composition of the jury pool when the strikes were made. *See, e.g., Batson*, 476 U.S. at 97; *United States v. Escobar-de Jesus*, 187 F.3d 148, 164-65 (1st Cir. 1999); *Chakouian v. Moran*, 975 F.2d 931, 934 (1st Cir. 1992).

Status as a "minority" is not a cognizable group under *Batson*. *Gray v. Brady*, 592 F.3d 296, 302 (1st Cir. 2010). Likewise, "young adults do not constitute a 'cognizable group' for the purpose of an Equal Protection challenge to the composition of a petit jury." *United States v. Cresta*, 825 F.2d 538, 545 (1st Cir. 1987) (citing *Barber v. Ponte*, 772 F.2d 982, 996-1000 (1st Cir. 1985) (en banc)).

### B.     Merits of the Claim

Petitioner argues that the government improperly discriminated against young African-American males or young men "of color," which he defines as "dark-skinned." Reviewed *de novo*, even with the benefit of the correct *Batson* standard, petitioner's Fourteenth Amendment claim fails.[4]

First, persons "of color" are not a cognizable group under *Batson*. *Id.* To prove that a prospective juror was a member of such a cognizable group, petitioner must show that "(1) the

---

[4] As noted, the jury that heard the case had at least five African-American members. Petitioner does not contend that the jury that heard his case did not represent a fair cross-section of the community.

group is identifiable and limited by some clearly identifiable factor, (2) a common thread of attitudes, ideas, or experiences runs through the group, and (3) a community of interests exists among the group's members, such that the group's interest cannot be adequately represented if the group is excluded" from the jury. *Gray*, 592 F.3d at 305-06 (citing *Murchu v. United States*, 926 F.2d 50, 54 (1st Cir. 1991)). Although African-Americans and Hispanics are each a distinct cognizable group, when combined they lack the necessary characteristics, definable qualities, common thread of attitudes, or interests to be considered a cognizable "group." *Accord Gray*, 592 F.3d at 306 (refusing to assume that "'minorities' possess these necessary characteristics of a 'cognizable group'"); *see also United States v. Suttiswad*, 696 F.2d 645, 649 (9th Cir. 1982) ("Any group which might casually referred to as 'non-whites' would have no internal cohesion . . . . Certainly, the members of such a group would have diverse attitudes and characteristics which would defy classification."). Simply put, status as a "dark-skinned" person is not indicative of membership in a protected group with distinct cognizable rights for purposes of a *Batson* challenge.

Second, and for similar reasons, "age" is not a cognizable group under federal law. It is noteworthy that petitioner does not consistently or clearly define the age group that he contends was the target of unconstitutional discrimination, alternatively describing the group as "apparently young," "every dark-skinned man under thirty," and "black men [under] forty." (Docket No. 2, at 7, 9). Such broad categories, consisting of every person between the ages of 18 and 30 (or 40), cannot constitute *Batson*-cognizable groups. *See Barber v. Ponte*, 772 F.2d at 998 ("Without much effort we can point to various significant social indicators that would seem to punctuate clear differences in the attitudes, values, ideas, and experiences of 18 year olds vis-a-vis 34 year

olds . . . .").

Finally, petitioner cannot establish a *prima facie* case of discrimination by cobbling together cognizable groups. Petitioner argues that the government discriminated against either young men "of color" or young African-American men.[5] Recognizing that age and status as a "minority" are not acceptable grounds for a Fourteenth Amendment challenge, petitioner's challenge boils down to a combination of race, gender, and age. Petitioner has essentially taken two cognizable groups (African-Americans and men) and joined them together with a third undefined category (age or a juror's "apparently young" appearance) in an attempt to create a cognizable subclass.

Even without the dubiously broad skin-color reference, the category advanced by petitioner ("young African-American males") fails to meet the requirements of a cognizable group set forth in *Murchu*. 926 F.2d at 50. The group lacks a clearly definable factor that separates it from other groups. In particular, it is unclear how young black men would be distinguished from older black men with respect to the common identifying characteristics necessary to establish a cognizable group under *Batson*. Indeed, petitioner himself fails to define the term "young" consistently throughout his petition. Presumably, this is, at least in part, due to the fact that the sub-category is to a large extent indistinguishable from the general population of African-American males. In short, petitioner has not shown that a "common thread of attitudes, ideas, or experiences runs through the group." *Murchu*, 926 F.2d at 50.

---

[5] Even if petitioner were successful in establishing that men "of color" merited constitutional protection, it is doubtful that he would be able to show that the government followed a pattern of challenging jurors within the allegedly protected group because of their status in that group. For example, petitioner would have difficulty raising the necessary inference where the government did not challenge a 34-year-old black man, but did challenge a 41-year-old dark-skinned Hispanic man.

Accordingly, the Court finds that the Massachusetts Appeals Court reached a conclusion that was consistent with federal law, and the petition for a writ of habeas corpus will therefore be denied.

## IV. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: February 14, 2013